UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-cv-21748-LMR

GABRIELA PARRA BERRIOS,

      Plaintiff, *pro se*,

v.

JOSEPH B. EDLOW, U.S. Citizenship and Immigration
Services *in his official capacity*, et al.

      Defendants.

_____/

## <u>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION</u>[1]

**THIS CAUSE** comes before the Court on Plaintiff Gabriela Parra Berrios' ("Plaintiff")

Motion for Preliminary Injunction (the "Motion"). [ECF No. 10].[2] Defendants Joseph B. Edlow,

Director of United States Citizenship and Immigration Services; Secretary Kristi Noem, or her

successor in the official capacity as Secretary of U.S. Department of Homeland Security; Pam

Bondi, or her successor in the official capacity as Attorney General of the United States; Jason A.

Reding Quinones, in his official capacity as United States Attorney for the Southern District of

Florida; and United States Citizenship and Immigration Services ("Defendants" or the

"Government") filed a response [ECF No. 11], and Plaintiff her reply [ECF No. 12]. The matter is

now ripe for review. As discussed below, after reviewing the record and being otherwise advised,

Plaintiff's Motion [ECF No. 10] is **DENIED**.

---

[1] The undersigned filed an Order Regarding Jurisdiction on March 18, 2026. [ECF No. 7]. To date, neither party has opted out of magistrate jurisdiction.

[2] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

**BACKGROUND**

Plaintiff is a Venezuelan national who entered the United States in January 2014 and became a conditional lawful permanent resident in 2019. [ECF No. 1 at ¶ 13]. Plaintiff is married to a natural-born United States citizen, and the couple reside together in this District. [*Id.* ¶ 14]. On September 28, 2021, Plaintiff filed a Petition to Remove Conditions on Residence ("I-751 Form") with United States Citizenship and Immigration Services ("USCIS") as an individual petitioner pursuant to a waiver under 8 U.S.C. § 1186a(c)(4). [*Id.* ¶ 15]. Plaintiff filed her I-751 Petition on the date her conditional permanent resident card expired and has since operated pursuant to the automatic extension of lawful permanent resident status provided under 8 C.F.R. § 216.4(a)(1) for petitioners with pending I-751 petitions. [*Id.* ¶ 17]. Currently, Plaintiff holds a Form I-551 Alien Documentation, Identification, and Telecommunications ("ADIT") stamp issued by the USCIS Miami Field Office that is valid through September 28, 2026. [*Id.* ¶ 17].

On August 1, 2024, Plaintiff filed an Application for Naturalization ("N-400 Form") and scheduled a naturalization interview for September 17, 2024. [*Id.* ¶ 20]. USCIS rescheduled the interview to October 14, 2025, and conducted the interview at the USCIS Miami Field Office. [*Id.* ¶ 21]. During the interview, the USCIS officer noted Plaintiff's pending I-751 Form and conducted a combined examination. [*Id.*]. Plaintiff alleges she passed the English, U.S. History, and Government tests, and satisfied the requirements under 8 U.S.C. § 1423 and 8 C.F.R. § 335.2. [*Id.*]. Following Plaintiff's combined examination, the interviewing officer indicated on the USCIS Naturalization Interview Results form ("Form N-652") that a decision as to Plaintiff's naturalization could not be made at that time. [*Id.* ¶ 22].

On or about February 11, 2026, the 120-day statutory deadline for Plaintiff's naturalization

examination expired under 8 U.S.C. § 1447(b).[3] [*Id.* ¶ 23]. Before the expiration date, Plaintiff alleges she exhausted all available administrative remedies to resolve her pending naturalization status with USCIS, including submitting multiple e-Requests, contacting the USCIS Contact Center by telephone, filing a formal Ombudsman request, and initiating a congressional inquiry through the Office of U.S. Representative Maria Elvira Salazar. *See* [*id.* ¶¶ 24–28]. Through its Miami and Caribbean District Congressional Liaison, USCIS confirmed that Plaintiff's cases are subject to the adjudication hold under Policy Memorandum PM-602-0192, placing a hold on the adjudication of her pending immigration benefit requests. [*Id.* ¶ 27]. Thus, because USCIS failed to issue a determination and continues to hold Plaintiff's pending immigration benefits requests, Plaintiff filed her Complaint on March 17, 2026, with this Court. *See generally* [*id.*]. Plaintiff asserts two counts against Defendants in her Complaint: Count I, violation of 8. U.S.C. § 1447(b) for failure to adjudicate her Form N-400 naturalization application within the statutory 120-day timeline; and Count II for failure to adjudicate her Form I-751 petition to remove conditions on residency application within a reasonable time under the Mandamus Act and Administrative Procedures Act ("APA"). *See* [*id.* ¶¶ 32–43].

Moreover, as relevant to the instant Motion, Plaintiff argues that her pending applications are not merely a result of delay but rather a failure to adjudicate the applications altogether based on policy memoranda issued by USCIS on December 2, 2025, and January 1, 2026. *See* [ECF No. 12 at 4–5]. Namely, on December 2, 2025, USCIS issued Policy Memorandum PM-602-0192, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by*

---

[3] "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. § 1447(b).

*Aliens from High-Risk Countries* ("PM-0192") placing a hold on pending immigration benefits applications originating from certain countries and placing them through a re-review process. *See* [ECF No. 11 at 2]. Venezuela is one of the nineteen countries included in this policy memorandum. *See* [*id.*]. On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, *Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries*, ("PM-0194") expanding the list of countries from where benefit applications would be re-reviewed. *See* [*id.* at 3]. Venezuela was one of the thirty-nine countries listed under PM-0194. *See* [*id.*].

Plaintiff now requests that this Court grant preliminary injunctive relief and enjoin Defendants from withholding decisions on her Form I-751, Petition to Remove Conditions on Residence, and Form N-400, Application for Naturalization (collectively, the "Immigration Benefit Applications"). *See* [ECF No. 10]. Specifically, Plaintiff requests the Court to enter a preliminary injunction ordering Defendants to adjudicate Plaintiff's Immigration Benefit Applications within thirty days of the order. [*Id.* at 7].

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(a), the Court may enter a preliminary injunction "to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990) (quoting *Am. Radio Ass'n v. Mobile S.S. Ass'n, Inc.*, 483 F.2d 1, 4 (5th Cir. 1973)). Before a court grants a preliminary injunction, the moving party must establish four conditions: (1) a substantial likelihood of success on the merits; (2) a showing that the movant will suffer irreparable injury if an injunction does not issue; (3) proof that the threatened injury to the movant outweighs any harm that might result to the non-moving party; and (4) a showing that the public interest will not be disserved by the granting of a preliminary injunction. *See id.* at 1284–

4

85 (citing *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987)). The "[f]ailure to show any of the four factors is fatal" to a motion for a preliminary injunction. *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

Importantly, an "injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Hochstein v. City of Miami Beach*, 758 F. Supp. 3d 1348, 1354 (S.D. Fla. 2024) (internal quotes omitted) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). Further, courts in this Circuit have emphasized that the purpose of a preliminary injunction is to preserve the status quo of a case, not to "render a full and final decision on the merits." *Amador v. Meeker*, No. 8:11-CV-1977-JDW-AEP, 2011 WL 4502092, at *4 (M.D. Fla. Sept. 28, 2011) (denying motion for preliminary injunction seeking enjoinment of USCIS decision denying immigration adjustment of status). Finally, before a court reaches the merits of whether to grant a preliminary injunction, "it must be assured it has the [jurisdiction and] authority to grant the requested equitable relief." *Stolfat v. Equifax, Inc.*, No. 24-80856-CV, 2024 WL 4881239, at *1 (S.D. Fla. Sept. 19, 2024); *A.S.M. v. Donahue*, No. 7:20-CV-62 (CDL), 2020 WL 1847158, at *1 (M.D. Ga. Apr. 10, 2020) ("Before the Court decides whether Petitioners have satisfied the requirements for preliminary injunctive relief, it must determine whether it has jurisdiction to decide the matter.").

## **DISCUSSION**

At the outset, it does not appear that the Court has jurisdiction to review, in this case, the pace at which Plaintiff's Immigration Benefit Applications are adjudicated. Therefore, Plaintiff cannot show substantial likelihood of success on the merits.

As previously stated, Plaintiff's case involves the adjudication of two immigration benefit forms: (1) an N-400 Naturalization Form and (2) a I-751 Petition to Remove Conditions on

Residency. *See* [ECF No. 1 ¶ 13–18]. Courts have held, and Plaintiff concedes, that the I-751 Form must be adjudicated, and conditions on residency be removed, before the N-400 Form and naturalization process can proceed. *See* [ECF No. 12 at 3]; *see also Heslop v. Holder*, No. 8:13-CV-944-T-24MAP, 2014 WL 554563, at *3 (M.D. Fla. Feb. 12, 2014), *aff'd sub nom. Heslop v. Att'y Gen. of U.S.*, 594 F. App'x 580 (11th Cir. 2014) (dismissing N-400 claim where conditional nature of resident status had not yet been removed (citing *Abghari v. Gonzalez,* 596 F.Supp. 2d 1336, 1350–51 (C.D. Cal. 2009) ("[T]he Court cannot find, as a matter of law, that USCIS is obligated to approve a naturalization application before the conditions have been removed from an applicant's status.")); *Ali v. Dist. Dir., Miami Dist., U.S. Citizenship & Immigr. Servs.*, 743 F. App'x 354, 357 (11th Cir. 2018) ("In order to become a naturalized United States citizen, an applicant must comply with several statutory prerequisites . . . [including], an applicant must show that he was lawfully admitted for permanent residence in the United States." (citing *Reganit v. Sec'y, Dep't of Homeland Sec.*, 814 F.3d 1253, 1257 (11th Cir. 2016)).

Therefore, Plaintiff's I-751 Form serves as an initial step to her naturalization process. However, the pace at which the I-751 Form is adjudicated appears to be within the discretion of USCIS and the Secretary of Homeland Security. Indeed, while 8 U.S.C. § 1447(b) explicitly gives the District Court jurisdiction to preside over naturalization processes that run afoul of the 120-day deadline, *see* 8 U.S.C. § 1447(b), the same cannot be said for the statute underscoring I-751 Forms. Indeed, Plaintiff's I-751 was filed as a waiver under 8 U.S.C. § 1186a(c)(4) which states:

> The Secretary of Homeland Security, *in the Secretary's discretion*, *may* remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) if the alien demonstrates that—
>
> (A) extreme hardship would result if such alien is removed;

(B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1); or

(C) the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse or child was battered by or was the subject of extreme cruelty perpetrated by his or her spouse or citizen or permanent resident parent and the alien was not at fault in failing to meet the requirements of paragraph (1); or

(D) the alien meets the requirements under section 1154(a)(1)(A)(iii)(II)(aa)(BB) of this title and following the marriage ceremony was battered by or subject to extreme cruelty perpetrated by the alien's intended spouse and was not at fault in failing to meet the requirements of paragraph (1).

8 U.S.C. § 1186a(c)(4) (emphasis added). The Government also cites the jurisdiction stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) that, in conjunction with § 1186a(c)(4), appears to preclude the Court's review of the pace of adjudication of Plaintiff's I-751 Form. Section 1252(a)(2)(B) states in relevant part:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), *and regardless of whether the judgment, decision, or action is made in removal proceedings*, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

The Eleventh Circuit has adopted this reasoning in the context of other immigration benefit applications. In *Kanapuram v. Dir., US Citizenship & Immigr. Servs.*, the Eleventh Circuit affirmed that language in 8 U.S.C. § 1255(a) concerning the adjudication of Form I-485 status

7

adjustment applications fell under the jurisdiction stripping provisions of § 1252(a)(2)(B). *See* 131 F.4th 1302, 1306–08 (11th Cir. 2025). Namely, § 1255(a) states that "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . *may* be adjusted by the Attorney general, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence[.]" 8 U.S.C. § 1255(a) (emphasis added). As such, taken together with the provisions of § 1252(a)(2)(B), it overcame the presumption of judicial review because the statute granted the discretion not only as to "the ultimate decision to approve or deny a visa, but also [regarding] 'actions taken in the course of the decision-making process—including the pace at which that process is undertaken[.]'" *Id*. at 1307 (quoting *Cheejati v. Blinken*, 106 F.4th 388, 391 (5th Cir. 2024)).

Similarly, here the discretionary language in § 1186(a)(c)(4) paired with the jurisdictional stripping provision of § 1252(a)(2)(B)(ii) appears to preclude this Court from adjudicating Plaintiff's claims related to the pace or delay of her I-751 application. *See* 8 U.S.C. § 1186a(c)(4); 8 U.S.C. § 1252(a)(2)(B)(ii). Plaintiff argues that *Kanapuram* and related cases are not applicable as § 1252(a)(2)(B) operates in the context of removal procedures, and that the statute and application at issue in *Kanapuram* are structurally different to those here. *See* [ECF No. 12 at 3–4]. However, the Eleventh Circuit addressed much of this argument by pointing out that although § 1252 is titled "Judicial Review of orders of removal[,]" the initial paragraph of § 1252(a)(2)(B) states that the jurisdictional bar applies "regardless of whether the judgment, decision, or action is made in removal proceedings[.]" *See Kanapuram*, 131 F.4th at 1308 (quoting 8 U.S.C. § 1252(a)(2)(B)); *see also Patel v. Garland*, 596 U.S. 328, 338 (2022) (stating jurisdictional stripping provision of § 1252(a)(2)(B) is not limited to removal proceedings). Moreover, like § 1255(a) in *Kanapuram*, here § 1186a(c)(4) involving the adjudication of I-751 Forms under waiver

expressly states that the Secretary "may remove" the conditional basis of the permanent resident at his "discretion." *See* § 1186a(c)(4); *see also Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1256 (S.D. Fla. 2022) (finding court lacked jurisdiction over expedited adjudication of I-130 form where "the pace of USCIS' processing of I-130 Petitions is left to the sound discretion of the agency, and because such pacing neither qualifies as or is subject to a nondiscretionary act[.]"); *Nascimento v. United States Dep't of Homeland Sec.*, 689 F. Supp. 3d 1245, 1250 (S.D. Fla. 2023) (dismissing case regarding pace of I-526 form due to lack of jurisdiction where "there is no congressionally or administratively mandated timetable in which I-526 petitions must be adjudicated."). Indeed, neither § 1186a(c)(4) nor 8 C.F.R. § 216.5, applying to I-751 petitions filed under waiver, provide a mandated timetable of adjudication. *See* 8 U.S.C. § 1186a(c)(4); 8 C.F.R. § 216.5; *Kanapuram*, 131 F.4th at 1307; *Alfassi*, 614 F. Supp. 3d at 1256; *Nascimento*, 689 F. Supp. 3d at 1250. As such, it appears, at this juncture, that the Court does not have jurisdiction to review the discretionary pace at which USCIS adjudicates Plaintiff's I-751 application.[4]

---

[4] Plaintiff also argues that the Policy Memoranda operate as a failure to adjudicate the applications, rather than a delay. *See* [ECF No. 10 at 4]. A review of both memoranda show that they commit relevant applications to "comprehensive review[,]" rather than non-adjudication. *See* PM-0192 at 1; PM-0194 at 1. Moreover, both memoranda state that within "90 days of issuance of this memorandum, USCIS will prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance." *See* PM-0192 at 3; PM-0194 at 5. Such update was issued on March 30, 2026. *See Update on USCIS' Strengthened Screening and Vetting*, U.S. Citizenship and Immigration Services (March 30, 2026), https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-and-vetting. As such, at this juncture, the Court cannot say whether the hold promulgated by the memoranda serves as a wholesale failure to adjudicate. *See Alfassi*, 614 F. Supp. 3d at 1256 ("The passage of time cannot, standing alone, support a claim of unreasonable delay.").

Moreover, as explained above, Plaintiff's pending I-751 Form must first be adjudicated before her N-400 Form may be considered and the naturalization process continued. *See Heslop*, 2014 WL 554563, at *3; *Ali*, 743 F. App'x at 357. Therefore, the Court, at this time, is foreclosed from adjudicating the pace of the N-400 Form, and thus Plaintiff's Motion must be **DENIED**.[5] *See Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 591 n.5 (11th Cir. 1997) ("Given its lack of subject matter jurisdiction, the district court also properly denied [the] motion for a preliminary injunction."); *Gibson v. Sec. & Exch. Comm'n*, No. 1:19-CV-01014-WMR, 2019 WL 5698679, at *2 (N.D. Ga. May 8, 2019), *aff'd,* 795 F. App'x 753 (11th Cir. 2019) ("[T]he Court concludes that it lacks subject-matter jurisdiction over this case, and, accordingly, that Plaintiff cannot show a substantial likelihood of success on the merits.").

The undersigned emphasizes the narrow holding of this Order, applying only to Plaintiff's Motion for Preliminary Injunction. Defendants shall respond to Plaintiff's Complaint within the required time under the Federal Rules of Civil Procedure.

**SIGNED** this 5th day of May, 2026

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court also notes that granting Plaintiff's Motion would essentially resolve the merits of Plaintiff's case, which is not the purpose of a preliminary injunction. *See Amador*, 2011 WL 4502092, at *4.